# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VFS US LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-02226** |
| **VACZILLA TRUCKING, LLC,** | **SECTION "L" (2)** |
| **CRYSTAL DITCHARO, AND** | |
| **DOMINICK DITCHARO** | |

## ORDER & REASONS

Before the Court is Plaintiff VFS US LLC's ("VFS") Motion to Dismiss Counterclaims of Defendants, Or, Alternatively, to Require Joinder of Parties.  R. Doc. 39.  The Court has reviewed the briefs and the applicable law, and the Court now issues this Order & Reasons.

## I.    BACKGROUND

This case arises out of a contract dispute.  Vaczilla was a new firm that sought to enter the market for servicing water to the oil and gas exploration and production industry in North Dakota.  R. Doc. 24 at 13–14.  Vaczilla's initial foray into the market yielded little revenue.  R. Doc. 24 at 14.  In response to this lack of demand, Defendants Vaczilla, Crystal Ditcharo, and Dominick Ditcharo ("Vaczilla") purchased ten vehicles from Parish Truck Sales, Inc. ("Parish Truck Sales") for the purpose of transporting crude.  R. Doc. 24 at 14.  VFS financed Vaczilla's purchases through one Credit Sales Contract and four Secured Promissory Notes (the "Finance Contracts").  Vaczilla subsequently defaulted on its payments to VFS, and VFS brought the present action to collect the balances due.

Vaczilla filed a counterclaim in August 2015, arguing that the Finance Contracts should be rescinded due to fraud and error.  Vaczilla also brought a counterclaim for negligent representation against VFS.  Regarding the request for rescission, Vaczilla alleges that its

contract with Parish Truck Sales was premised on an improper sales method.  Vaczilla could not afford to make down payments, so Vaczilla was charged an excessive price for the vehicles, and in return Vaczilla received a credit for down payments which Vaczilla never made to Parish Truck Sales.  This arrangement allowed Vaczilla to purchase the vehicles without making the down payments set forth in the Finance Contracts.  This deal appeared favorable to Vaczilla, because Vaczilla did not have sufficient capital to make the down payments.  According to Vaczilla, the company relied on Parish Truck Sales's assurances that the arrangement was legally and fiscally sound, and VFS signed off on the Finance Contracts despite being aware that the price appeared to be suspicious.

Vaczilla claims that the excessive price for the vehicles and the accompanying illusory down payments constitute improper acts which warrant rescission of the contracts.  Specifically, Vaczilla avers that VFS "knew or should have known" that the price for the trucks was unusually high and should have concluded that an impropriety existed, and that notice of such impropriety is sufficient in equity to rescind the Financing Agreement on the grounds of fraud, R. Doc. 24 at 18, as well as error, R. Doc. 24 at 19.  Vaczilla additionally argues that VFS's actions constitute negligent misrepresentation, and that said misrepresentation entitles Vaczilla to damages.  R. Doc. 24 at 20.

## II.   PRESENT MOTION

VFS moves to dismiss the counterclaims filed by Vaczilla against VFS, on the grounds that Vaczilla fails to state a claim.  R. Doc. 39 at 1.  VFS argues that Vaczilla's claims fail for five reasons: (1) the alleged misrepresentations were made by a third party seller, not VFS, and therefore no fraudulent conduct is alleged; (2) the seller's alleged misrepresentations and errors were explicitly printed in the contracts at issue, and thus cannot form a basis for fraud, error, or

justifiable reliance; (3) VFS owed no fiduciary duty to advise Vaczilla of the prudence of

Vaczilla's irregular contract with Parish Truck Sales; (4) Vaczilla ratified the Finance Contracts

after having knowledge of the alleged fraud; and (5) all of Vaczilla's counterclaims are barred by

the applicable statutes of limitations.  Alternatively, VFS contends that Vaczilla must join the

parties who allegedly made misrepresentations to Vaczilla in order to avoid inconsistent verdicts,

multiple recoveries, and redundant litigation.  R. Doc. 39 at 2.

### A.      VFS's Motion to Dismiss, or, Alternatively, to Require Joinder

#### 1.      Choice of Law

VFS begins its legal argument by arguing that North Carolina law controls VFS's claims

for rescission.  R. Doc. 39-1 at 9.  The Finance Agreements between VFS and Vaczilla contain a

choice of law provision which designates North Carolina law as governing the contract.  VFS

notes that Louisiana is receptive to choice of law provisions, so long as the provision does not

conflict with statutory law, jurisprudential law, or strong public policy considerations.  R. Doc.

39-1 at 9.  VFS concedes that Vaczilla's negligent misrepresentation claim is controlled by

Louisiana law, as negligent misrepresentation is a tort that falls outside the scope of the contract.

R. Doc. 39-1 at 9–10.

#### 2.      Vaczilla's Claim for Rescission for Fraud and Damages

VFS contends that Vaczilla can allege no fraudulent conduct on the part of Vaczilla, so

VFS's claim must fail.  R. Doc. 39-1 at 10.  VFS cites case law from 1988 suggesting that under

North Carolina law the defendant in a rescission action must make an affirmative representation

that was false.  R. Doc. 39-1 at 10 (citing *Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323

N.C. 559, 568 (N.C. 1988)).  In the alternative, VFS avers that active misrepresentation or

intentional conduct is also required to state a claim for fraud under Louisiana law.  R. Doc. 39-1

at 11 (citing *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, Civ.

Action No. 11-2002, 2012 WL 1698365 (E.D. La. May 15, 2012).

VFS also argues that Vaczilla fails to allege any duty to disclose to VFS.  According to

VFS, a claim of fraud by omission or nondisclosure will fail unless the party can allege a duty of

disclosure exists.  R. Doc. 39-1 at 11.  Cited North Carolina law indicates that borrower-lender

transactions do not typically give rise to fiduciary duties.  *Dallaire v. Bank of Am., N.A.*, 367

N.C. 363, 368 (N.C. 2014).

VFS avers that Vaczilla's fraud claim additionally fails because Vaczilla cannot

reasonably rely on the misrepresentations it alleges.  R. Doc. 39-1 at 11.  Under both cited North

Carolina and Louisiana law, fraudulent inducement claims are defeated if the relying party could

have discovered the truth through independent investigation.  North Carolina requires the

exercise of "reasonable diligence" in investigation.  *Oberlin Capital, L.P. v. Slavin*, 147 N.C.

App. 52, 58 (N.C. Ct. App. 2001).  VFS avers that Vaczilla knew the prices of the trucks because

it signed the contracts, and Vaczilla could have independently discovered the standard price of

similar trucks with ease.  Additionally, VFS characterizes Vaczilla's claim as a failure to legally

comprehend the impropriety of the contracts at issue.  VFS cites case law suggesting that

mistakes of law, such as a failure to recognize improper terms in a contract, are not actionable

under North Carolina law.

VFS brings two final arguments regarding Vaczilla's claims for fraudulent inducement.

First, VFS contends that Vaczilla ratified the contract with full knowledge of the alleged fraud or

error.  Even after learning that the sales prices were inflated and the down payments were non-

existent, Vaczilla ratified the contracts twice.  VFS argues that this effectively blocks Vaczilla's

claim.  Second, VFS argues that Vaczilla's claim is outside North Carolina's three-year statute of

limitations for rescission of a fraudulently obtained contract.  Contending that the statute of limitations began to run when VFS informed Vaczilla in February, 2012, that the price for the trucks seemed excessive, VFS calculates that Vaczilla's claim is now time-barred.

3.    Vaczilla's Claim for Rescission for Error

VFS claims that Vaczilla identifies two errors in its understanding of the contract that allegedly create actionable grounds for rescission.  First, Vaczilla erroneously believed that the inflated sales prices coupled with the fictitious down payments were both a legal and proper finance method.  Second, Vaczilla purchased the vehicles on the erroneous believe that Parish Truck Sales and Bennett would "secure work" for Vaczilla in the oil and gas injury.  VFS contends that these are inappropriate grounds for rescission.

VFS reiterates the argument that under North Carolina law mistakes of law cannot justify rescission, and characterizes Vaczilla's failure to recognize the impropriety of its agreement with Parish Truck Sales as a mistake of law.  R. Doc. 39-1 at 16.  VFS also argues that North Carolina law requires mutual mistake, and not unilateral mistake, for claims of rescission premised upon error.  R. Doc. 39-1 at 16.  Regarding Parish Truck Sales's oral promise to provide Vaczilla with sales, VFS argues that the integration clause in the Finance Contracts voided all prior representations, including said promises.

4.    Vaczilla's Claim for Negligent Misrepresentation

Vaczilla alleges that VFS "knew or should have known of the improper manner in which Parish and Bennett were setting up financing arrangements for Vaczilla" and that "VFS had a duty to supply [Vaczilla] with correct information and breached that duty when it did not disclose to them the impropriety or illegality of Bennett's proposed financing arrangement."  R. Doc. 24.  Under Louisiana law, a claim for negligent misrepresentation consists of four elements:

"(1) the defendant, in the course of its business or other matters in which it had a pecuniary interest, supplied false information; (2) the defendant had a legal duty to supply correct information to the plaintiff; (3) the defendant breached its duty, which can be breached by omission as well as by affirmative misrepresentation; and (4) the plaintiff suffered damages or pecuniary loss as a result of its justifiable reliance upon the omission or affirmative misrepresentation." *Blanchard v. Lee*, No. 13-220, 2013 WL 4049003, at *5 (E.D. La. Aug. 9, 2013). VFS contends that Vaczilla's claim fails as to the first, second, and fourth elements of negligent misrepresentation. R. Doc. 39-1 at 18.

VFS argues that VFS did not affirmatively misrepresent anything in the contract. Therefore, Vaczilla's claim is only actionable as a negligent "omission," which is only actionable in Louisiana if the defendant had "a legal duty to supply correct information." *Blanchard*, 2013 WL 4049003 at *5. VFS contends that Vaczilla cannot prove that a legal duty to disclose arose in the context of the lender-borrower relationship between VFS and Vaczilla. R. Doc. 39-1 at 19. Further, VFS restates its position that Vaczilla's claims arise from legal misconceptions, and argues that Louisiana disfavors any reliance on representations of law. Thus, Vaczilla's reliance was unjustified.

VFS lastly argues that Vaczilla's negligent misrepresentation claim is outside the one-year prescriptive period for negligent misrepresentation in Louisiana. R. Doc. 39-1 at 26. VFS avers that even if Vaczilla did not have complete knowledge of its claim, Vaczilla should have inquired in February, 2012, about the legality of its contract given that it included non-existent down payments and an inflated sales price. R. Doc. 39-1 at 20–21. Thus, VFS contends that Vaczilla's claim expired in February, 2013.

5.     VFS's Motion to Require Joinder

In the alternative, VFS argues that Vaczilla should be mandated to join Parish Truck Sales, Bennett, and Whitlow ("the Parish Defendants") as necessary party defendants in Counterclaim pursuant to Rule 19(a).  Fed. R. Civ. P. 19(a).   The contract between VFS and Parish Truck Sales also requires Parish Truck Sales to purchase any customer contracts that misrepresent the actual cash down payment made by a customer.  R. Doc. 39-1 at 23.  Therefore, "complete relief" requires rescission of contracts which are not currently before the Court.  R. Doc. 39-1 at 22.  VFS also notes that courts routinely require parties with a substantial interest in the outcome of rescission to be joined in the action.  R. Doc. 39-1 at 22.

Regarding Vaczilla's negligent misrepresentation claim, VFS asserts that because negligent misrepresentation is a tort subject to comparative fault that Parish Truck Sales must join all parties that might share in the fault in order to prevent inconsistent obligations.  R. Doc. 39-1 at 24.

**B.     Vaczilla's Opposition**

1.     Conflict of Laws

Vaczilla begins its Opposition by arguing that VFS oversimplifies the conflict of laws analysis for the claims at bar.  The choice of law clause in the Finance Contracts dictates that North Carolina law should be applied.  However, Vaczilla contends that Louisiana requires courts to employ a full-scale interest analysis in an action concerning the voluntariness of a contract due to fraud or mistake.  R. Doc. 43 at 5.  Vaczilla then performs Louisiana's applicable conflict of laws analysis, and concludes that Louisiana law governs all of the claims at bar.  R. Doc. 43 at 7–8.

2.      Claim for Rescission of Contracts for Fraud and Damages

Finding that Louisiana law applies, Vaczilla contends that its claim for rescission of contracts for fraud and damages should survive the motion to dismiss.  Vaczilla notes that Louisiana law recognizes that a contract can be rescinded for fraud committed by a non-party if the other party knew or should have known of the fraud.  R. Doc. 43 at 9 (citing La Civ. Code art. 1956).  Vaczilla then claims that VFS knew or should have known of the fraud perpetrated by Parish Truck Sales, Parish, and Bennett, because VFS recognized the unusually high price for the vehicle purchase at issue.  Noting that the present motion is a motion to dismiss, Vaczilla avers that whether Vaczilla knew of the fraud at issue must be guided solely by the pleadings, and thus is unsuitable for a motion to dismiss.  R. Doc. 43 at 9.  Vaczilla also notes that VFS does not contest the existence of a relationship of confidence between Vaczilla and Parish and Bennett, and that Vaczilla's reliance on their communications was justifiable.  R. Doc. 43 at 10.  Vaczilla additionally argues that its reliance was justifiable because the impropriety of the transactions was not ascertainable without "difficulty, inconvenience, or special skill."  R. Doc. 43 at 10.

Vaczilla opposes VFS's assertion that the distinction between legal and factual misrepresentations is dispositive in this case.  Vaczilla asserts that the Fifth Circuit explicitly rejected this argument in *Petrohawk Properties, L.P. v. Chesapeake Louisiana, L.P.*, 589 F.3d 380, 389 (5th Cir. 2012).  In the alternative, Vaczilla characterizes the misrepresentation as factual.  R. Doc. 43 at 11.

Vaczilla argues that it did not have knowledge of the fraud at issue until early 2015.  Therefore, it did not ratify the fraud when it signed documents concerning the contracts in November, 2012, and December, 2014.  R. doc 43 at 12.  Relying on the same logic, Vaczilla

contends that the prescriptive period on Vaczilla's claims did not begin to run until Vaczilla was alerted to the fraud in early 2015.

3.      Claim for Rescission of Contracts for Error

Vaczilla asserts that the facts at bar support a claim for rescission of contracts for error under Louisiana law.  Vaczilla argues that the representations of Parish and Bennett were a but-for cause of Vaczilla's entry into the financing agreement.  Vaczilla also alleges that VFS knew or should have known about the improper or illegal nature of the financing arrangement, given that a VFS employee identified the prices in the Finance Contracts to be "very high."  R. Doc. 39-1 at 6.

In the alternative, Vaczilla argues that it states a cognizable claim of rescission on the basis of error under North Carolina law.  Vaczilla contends that North Carolina recognizes unilateral errors as grounds for rescission, and that arguments of VFS to the contrary rely on outdated case law.

4.      Claim for Negligent Misrepresentation

Relying on its finding that Louisiana law applies, Vaczilla contends that their counterclaim alleges all of the elements of negligent misrepresentation for purposes of a motion to dismiss.  R. Doc. 43 at 15.  Vaczilla focuses its argument on VFS's contention that VFS did not owe a duty to Vaczilla.  Vaczilla cites case law suggesting that a duty to disclose arises within the scope of a contract if an "ordinary ethical person" would have investigated a contractual irregularity.  R. Doc. 43 at 16 (citing *Bunge Corp. v. GATX Corp.*, 557 So. 2d 1376, 1384 (LA. 1990).  Vaczilla avers that the high prices of the vehicles at issue were too irregular for VFS to continue forward with the contract without investigating and discovering the down-payment arrangement between Vaczilla and Parish Truck Sales.  Vaczilla further argues that

9

VFS was duty-bound to disclose to VFS said impropriety following its discovery.  R. Doc. 43 at 16–17.

Vaczilla also grapples with VFS's contention that VFS's alleged omission was legal in nature, and therefore not actionable.  Vaczilla contends that Louisiana recognizes both legal and factual negligent misrepresentations.  In the alternative, Vaczilla alleges that VFS had superior knowledge of the impropriety of the down-payment arrangement, and therefore VFS meets the heightened standard for a legal negligent misrepresentation.  R. Doc. 43 at 17–18.

5.     Opposition to Request for Joinder

VFS asks this Court to join the Parish Defendants to the present action, and Vaczilla opposes this request.  Vaczilla begins by distinguishing the state court proceedings regarding these contracts, *Vaczilla Trucking, LLC v. Parish Truck Sales, Inc.*, Docket No. 2015-7793, Civil District Court for the Parish of Orleans, State of Louisiana (the "State Court Case"), noting that the only claims brought against VFS in the State Court Case involve a different company called Mackzilla, LLC ("Mackzilla").  With this in mind, Vaczilla contends that the contractual disputes in the State Court Case are entirely separate from the disputes in the present action.  Because the contractual disputes are different, Vaczilla avers that the presence of the Parish Defendants in the State Court Case does not indicate that the Parish Defendants should also be present in the matter currently before the Court. R. Doc. 43 at 18–19.

Vaczilla then turns to the text of Rule 19(a), and argues that none of the enumerated circumstances calling for joinder are applicable.  Vaczilla contends that 19(a)(1) is inapplicable, because "complete relief" only refers to the parties before the Court.  The Parish Defendants are not currently before the Court.  Thus, Vaczilla states that "complete relief" can be afforded to the parties.  Vaczilla also argues that 19(a)(2) and (3) are not triggered by the facts at bar.  Vaczilla

10

concedes that the Parish Defendants claim an interest in the subject of the present action, but Vaczilla denies that a failure to join would impede the Parish Defendants' ability to protect the interest or be at risk of incurring double, multiple or otherwise inconsistent obligations.  R. Doc. 43 at 21–23.  Vaczilla additionally states that any joint liability for VFS's omissions owed by the Parish Defendants is cause for impleader, not joinder.  R. Doc. 43 at 23–24.

### C.     VFS's Reply

VFS replies with leave of Court.  VFS reiterates its position from its Motion to Dismiss, with a few additions.  VFS argues that the choice of law clause explicitly calls for North Carolina law to evaluate the enforceability of the choice of law clause.  R. Doc. 46 at 3.  In the alternative, VFS performs a short choice of law interest analysis, highlighting North Carolina's interests in validating choice of law clauses that point to North Carolina and protecting North Carolina lenders.  VFS also highlights its argument that the "discovery rule" does not toll prescription in any claim, because Vaczilla was aware in 2012 of all the facts that could give rise to their claim. R. Doc. 46 at 6.

## III.    LAW AND ANALYSIS

### A.     The Law of Rule 12(b)(6)

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A district court must construe facts in the light most favorable to the nonmoving party.  *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009).  The court must accept as true all factual allegations contained in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007). A motion to dismiss under rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

### B.    Choice of Law

The Finance Contracts contain a choice of law clause that points to North Carolina law. *See, e.g.*, R. Doc. 39-2 at 4. However, in this case two of the claims contest the validity of the contract at issue. In determining the validity of a contract containing a choice of law clause, a federal court sitting in diversity must apply the substantive law of the state in which it sits, including the state's conflict of laws principles. *See Hyde v. Hoffman-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007). A party cannot contractually set the choice of law rules which determine the validity of a choice of law clause. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005) ("The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses.). In Louisiana, "issues that pertain to the existence of the choice of law clause, such as consent and vices of consent, are governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. *Pratt Paper (LA), L.L.C. v. JLM Advanced Technical Servs.*, No. CIV.A. 11-1556, 2013 WL 395815, at *2 (W.D. La. Jan. 31, 2013). Because Vaczilla contests the viability of the contract as a whole and Vaczilla filed its case in Louisiana,

the Court must apply the conflict of laws rules of the state in which the Court sits, Louisiana, to determine whose law should be used to evaluate whether the contract is valid. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Louisiana is ordinarily not hostile to choice of law clauses, *see MedX Inc. of Florida v. Ranger*, 780 F. Supp. 398, 401 (E.D. La. 1991), so choice of law clauses usually dictate the substantive law of a contract when Louisiana conflict of laws principles apply. Here, however, the rescission claims directly attack the validity of the contract as a whole, so the Court must proceed in two steps to address VFS's 12b(6) motions. First, the Court must use the choice of law principles of the state in which it sits, Louisiana, to determine whose law applies to the contractual validity questions raised by the alleged fraud and error. Second, the Court must apply the applicable state's laws to the facts in the pleading which are pertinent to the claims for rescission based on fraud and error.[1]

### 1.   Louisiana's Choice of Law Rules

Louisiana's choice of law provisions are contained in two portions of its civil code. In contracts disputes or other matters concerning "conventional obligations," Louisiana employs an analysis of which state's law would be most "seriously impaired." La. Civ. Code. Art. 3537; *see also Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. CIV.A. 09-0750, 2010 WL 1416781, at *3 W.D. La. Apr. 1, 2010 ("Hollybrook raises issues of consent necessary to the existence of the contract and the choice of law provision. These issues are decided according to

---

[1] Assuming the contract were found valid, the Court notes that a third step would be required to determine the state whose substantive law governs post-validity contractual matters. The Court would apply Louisiana conflict of laws principles to the contract at issue and, finding a choice of law clause, would evaluate whether the choice of law clause dictates the substantive law of the contract. "Louisiana law gives effect to contractual choice of law clauses as a matter of course unless doing so would violate a strong public policy of the state." *MedX Inc. of Florida v. Ranger*, 780 F. Supp. 398, 401 (E.D. La. 1991).

the law of the state whose policies would be most seriously impaired if its law were not

applied.").  Article 3537 provides that

> [The state whose law is most seriously impaired] is determined by
> evaluating the strength and pertinence of the relevant policies of
> the involved states in the light of: (1) the pertinent contacts of each
> state to the parties and the transaction, including the place of
> negotiation, formation, and performance of the contract, the
> location of the object of the contract, and the place of domicile,
> habitual residence, or business of the parties; (2) the nature, type,
> and purpose of the contract; and (3) the policies referred to in
> Article 3515, as well as the policies of facilitating the orderly
> planning of transactions, of promoting multistate commercial
> intercourse, and of protecting one party from undue imposition by
> the other.

La. Civ. Code art. 3537.  Article 3537 directly references the policies contained in Louisiana's

general residual conflict of law article, La. Civ. Code art. 3515.

> [The state whose law is most seriously impaired] is determined by
> evaluating the strength and pertinence of the relevant policies of all
> involved states in the light of: (1) the relationship of each state to
> the parties and the dispute; and (2) the policies and needs of the
> interstate and international systems, including the policies of
> upholding the justified expectations of parties and of minimizing
> the adverse consequences that might follow from subjecting a
> party to the law of more than one state.

La. Civ. Code. art. 3515.

As articulated by the Fifth Circuit, the Louisiana's Civil Code requires that, in sequence,

a court must "(1) examine the pertinent contacts of each state with respect to 'the particular issue

as to which there exists an actual conflict of laws', (2) identify the various state policies that

might be implicated in the choice of law, and then (3) evaluate the 'strength and pertinence of

these policies in light of 'the relationship of each state to the parties and the dispute,' and in light

of 'the policies and needs of the interstate and international systems' . . . ."  *Marchesani v.*

*Pellerin-Milnor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001).  The Court adheres to this framework

in the following analysis.

2.      Examination of Pertinent Contacts

Turning to the enumerated factors, the Court finds that the pertinent contacts of North Carolina and Louisiana lean towards the application of Louisiana law.  North Carolina's contacts are: (1) VFS US is a North Carolina corporation; (2) the Finance Contracts were accepted by VFS US in the state of North Carolina; (3) and conduct relevant to VFS's alleged omissions such as a decision not to investigate or to disclose knowledge of impropriety may have occurred in North Carolina.  Louisiana's interests are: (1) Vaczilla is a Louisiana corporation; (2) Vaczilla's membership is comprised of two Louisiana domiciliaries; (3) the Finance Contracts were negotiated in Louisiana; (4) Vaczilla signed the Finance Contracts in Louisiana; (5) some of the conduct giving rise to the acts or omissions concerning the alleged fraud and error, i.e., the dinner at Drago's, occurred in Louisiana; (6) the alleged fraudulent conduct was committed by a Louisiana dealer; and (7) the purpose of the contract was to provide funding for the purchase of Louisiana goods from a Louisiana dealer.  Thus, the majority of the pertinent contacts suggest application of Louisiana law.

3.      Identification of Pertinent Policies

The Court finds that the majority of the implicated policies point towards North Carolina. Only one of the enumerated policies implicates Louisiana: (1) Louisiana has a policy interest in protecting its citizens from undue imposition by another, and fraud involving the abuse of a position of trust and confidence is alleged in the Complaint.  In turn, North Carolina has a policy interest in securing the validity of freely negotiated choice of law clauses pointing to North Carolina on the grounds of: (1) upholding justified expectations of parties; (2) the orderly planning of transactions; and (3) promoting multistate commerce.

4.      Evaluation of the Policies' "Strength and Pertinence"

While the numerical balance of implicated policies tilts towards North Carolina, the Court finds the strength of the policies implicating North Carolina to be weak when compared with Louisiana's pertinent policy of protecting its citizens from undue impositions.  The policies pointing towards North Carolina law are those supporting choice of law clauses generally, and are thus applicable in an abstract sense to every case involving a choice of law clause.  North Carolina has a relatively weak interest in the application of its fraud or mistake doctrines to these facts, because its citizens were not defrauded or mistaken.  In contrast, Louisiana's policies are highly relevant to the facts of this specific case.  Louisiana's policies regarding protecting its citizens from undue imposition would be significantly impaired if its law did not apply to questions of contract formation where acts or omissions occur in Louisiana, especially where the acts or omissions pertain to the sale of Louisiana property.  Fifth Circuit precedent supports giving great weight to Louisiana's policies concerning actions such as the one at bar.  In *D & J Tire*, the Fifth Circuit held that Louisiana's policies would be most seriously impaired if "another state's law applied to actions by Louisiana citizens for rescission of contracts based on fraud." *D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 204–05 (5th Cir. 2010).  So too here. Louisiana has a strong policy interest in protecting its citizens from fraud that occurred on Louisiana soil.

Louisiana also has an interest in enforcing its unilateral error doctrine in this case.  VFS allegedly addressed Vaczilla's mistake at dinner at Drago's, i.e., on Louisiana soil, and Louisiana has a strong policy interest in prompting contracting parties such as VFS to correct mistakes or errors when they discuss plausible errors within Louisiana's borders.

With the preceding discussion in mind, the Court turns to the question of which state's law would be "seriously impaired" if it were not applied in this matter.  *See Marchesani*, 269

16

F.3d at 487 (noting that the ultimate question is one of "serious impairment").  The majority of the pertinent contacts implicate Louisiana.  And while the number of implicated policies tips towards North Carolina, the weight of those policies is weak when compared with the relevant policies of Louisiana.  Thus, Louisiana's law would be most seriously impaired if its law were not applied, and the Court must apply Louisiana law.

VFS concedes that as negligent misrepresentation is a tort, it falls outside the scope of the choice of law clause.  VFS consequently notes that the claim is therefore "likely governed by Louisiana law."  R. Doc. 39-1 at 9.  The Court agrees, and finds that the contacts and policies evaluated in the preceding conflict of laws analysis are equally relevant to Louisiana's conflict of laws principles regarding torts such as the negligent misrepresentation claim.

### C.    Claims for Rescission of Contracts for Fraud and Damages

Under Louisiana law, a claim for rescission of a contract for fraud requires the following elements: (1) a misrepresentation, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another, and (3) the error induced by the fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract.  *See Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 614 (E.D. La. 2015).  Article 1956 of Louisiana's Civil Code provides for the rescission of a contract on grounds of fraud by a non-party to the contract "if the other party knew or should have known of the fraud."  La. Civ. Code art. 1956.  Vaczilla must therefore provide facts that plausibly support the three elements of a claim for rescission of a contract for fraud in addition to facts suggesting that VFS knew or should have known of the alleged fraud.

However, fraudulent inducement "does not vitiate a party's consent when the party against whom the fraud was directed could have ascertained the truth without difficulty,

inconvenience, or special skill." La. Civ. Code art. 1954. Thus, Vaczilla's claim also fails if

their pleading alleges facts sufficient to support a finding that they justifiably relied on any

alleged misrepresentations or omissions.

> 1. The Misrepresentation or Omission of True Information

Vaczilla claims that Bennett of Parish Truck Sales misrepresented true information when

Bennett proposed the phantom down payments to Vaczilla. R. Doc. 24 at 15. Vaczilla alleges

that when Bennett was questioned about the propriety of the phantom down payments, that

Bennett responded "that Parish frequently entered into such arrangements with other customers."

R. Doc. 24 at 15. This Court must accept Vaczilla's pleading as true, and Bennett's statement is

a misrepresentation of true information. It is of no consequence that the propriety of the

information may be characterized as legal. Misrepresentations of law qualify as false statements

for purposes of fraud under Louisiana law. *See Petrohawk Properties, L.P. v. Chesapeake*

*Louisiana, L.P.*, 689 F.3d 380, 389 (5th Cir. 2012); *see also Lupo v. Lupo*, 745 So. 2d 402, 405–

405 (La.Ct.App. 1985) (finding fraud where a lawyer assured his client that by signing an appeal

bond he would not "have any [legal] problems" and neglecting to mention that the bond "would

act as a mortgage on his property.").

Bennett also appears to have omitted true information in his conversation with Vaczilla.

Bennett neglected to mention the existence of a dealer agreement between Parish Truck Sales

and VFS that included a warranty that all down payments were bona fide and "not advanced by

Dealer to Customer." R. Doc. 39 at 23). Accepting as true that Bennett both misrepresented the

propriety of the phantom down payments and omitted discussion of Parish Truck Sales's

warranty to accept bona fide down payments, Vaczilla sufficiently pleads this element for

purposes of a motion to dismiss.

2.      The Intent to Obtain an Unjust Advantage

Vaczilla alleges that Parish and Bennett intended to obtain unjust advantage "in the form of increased sales by this intentional[] misrepresentation." R. Doc. 24 at 18. The Court finds sufficient evidence in the pleadings to support this allegation. Bennett sold numerous expensive vehicles to Vaczilla, and his misleading statements and omissions regarding the propriety of the down payment arrangement supports a finding that he lied to Vaczilla for personal gain. Vaczilla therefore sufficiently pleads this element for purposes of a motion to dismiss.

3.      Error Induced by Fraud Substantially Influenced Consent to Contract

Vaczilla claims that Parish and Bennett's misrepresentations and omissions directly resulted in Vaczilla's decision to enter into the contract at issue. Vaczilla avers that a relationship of confidence existed between Mr. Ditcharo, of Vaczilla, and Bennett, and that abuse of this trust overcame Vaczilla's uneasiness with the terms of the vehicle purchase and the associated financing agreements with VFS. R. Doc. 24 at 15. The facts provided in support of this allegation are sufficient for purposes of surviving a motion to dismiss.

4.      Knowledge of the Alleged Fraud

Vaczilla premises its claim that VFS knew or should have known of the alleged fraud on a conversation that occurred over dinner at Drago's in New Orleans. Mr. Ditcharo met with Richard Cluebine, a regional manager for VFS, on or about February 15, 2012, to discuss a grant of additional financing to Vaczilla. R. Doc. 24 at 16. Vaczilla alleges that Mr. Cluebine noted over the course of dinner that "the sale prices of the trucks and trailers were very high and further remarked that he had never seen trailer prices that high." R. Doc. 24 at 16. Accepting this statement as true, Vaczilla plausibly imputes knowledge of the fraud at issue to VFS. The question of whether or not VFS knew or should have known that Parish had committed fraud

must be guided solely by the pleadings.  *See 5876 57th Drive, LLC v. Lundy Enterprises, LLC*, No. CIV.A. 13-5012, 2014 WL 1246842, at *9 (E.D. La. Mar. 25, 2014) (characterizing whether a defendant knew or should have known of a third party's fraud as a question of fact not suitable for a motion to dismiss).

>           5.      Justifiable Reliance

Vaczilla's claim for rescission of the finance contracts on grounds of fraud fails if Vaczilla's reliance on the misrepresentations or omissions was not justifiable.  The misrepresentations and omissions by Parish Truck Sales concern the propriety of the phantom down payments.  Vaczilla concedes that its representatives "questioned [the down payment] arrangement" when Bennett proposed that Parish Truck Sales would refund Vaczilla's down payment and compensate by inflating the sales price.  R. Doc. 24 at 15.  Vaczilla also, at best, should have recognized that Parish Truck Sales's scheme called for a questionable half-truth on the part of Vaczilla.  The evidence shows that Dominick Ditcharo, as a representative of Vaczilla, signed documents representing to VFS that a down payment was paid for the vehicles in question.  *See, e.g.*, R. Doc. 39-3 at 2.  While a down payment was paid, it was also almost immediately refunded.  The propriety of this arrangement arrangement should appear somewhat dubious, even to a layperson, upon finding references to the illusory down payment in the finance contract for the goods at issue.

The Court also hesitates to find Vaczilla's trust in Bennett justifiable when Vaczilla could easily have asked VFS for its opinion regarding the legality of phantom down payments.  Vaczilla alleges that it was unaware until 2015 of the agreement between VFS and Parish Truck Sales that all down payments must be bona fide, R. Doc. 43 at 11, and the Court must accept this as true for purposes of a motion to dismiss.  However, it is also undeniable that Vaczilla

represented to VFS that a down payment was paid on the vehicles in question when Vaczilla signed the finance agreements. *See e.g.*, R. Doc. 39-3 at 2. "Where the alleged misrepresentation relates to facts which could have been discovered upon investigation or inspection . . . that party cannot subsequently complain that his consent was vitiated by fraud." *Smoothie King Franchises, Inc. v. Southside Smoothie & Nutrition Ctr., Inc.*, No. CIV.A. 11-2002, 2012 WL 1698365, at *10 (E.D. La. May 15, 2012). While relying on one's lender for legal advice may not be the savviest practice under normal circumstances, Vaczilla had an opportunity to discuss down payments with VFS when they signed the finance contract and noted a reference to the phantom down payments in its terms.

While the question is a close one, the Court finds that Vaczilla's pleadings are sufficient to allege justifiable reliance on Bennett's alleged misrepresentations and omissions. Vaczilla alleges a relationship of trust and confidence between Vaczilla and Bennett. The relationship was partially built on a long-standing business relationship between Mr. Ditcharo and a Parish Truck Sales employee, Michael Whitlow. R. Doc. 24 at 15. The reliability of the misrepresentations was also bolstered by the fact that multiple employees of Parish Truck Sales were involved with the transactions, including the finance manager, and the fact that the checks refunding Vaczilla's down payments were drawn from an official Parish Truck Sales account. R. Doc. 24 at 16. A later motion for summary judgment may test these allegations, but at this stage of the proceeding enough has been plead to survive a 12(b)(6) motion.

> 6.      Ratification of the Finance Contracts

VFS contends that Vaczilla's fraud claim is barred, because Vaczilla ratified the contracts after VFS informed Vaczilla of the excessive sales prices. R. Doc. 39-1 at 14. Vaczilla specifically points to two Modification Agreements, one executed in November 2012, and one in

December 2014.  R. Doc. 39-1 at 14.  However, VFS premises its affirmative defense of
ratification solely on the grounds of North Carolina law, and does not argue Louisiana law in the
alternative.  Given the applicability of Louisiana law to this claim, VFS's affirmative defense
fails.

### D. Claim for Rescission of Contracts for Error

Under Louisiana law, error vitiates consent "when it concerns a cause without which the
obligation would not have been incurred and that cause was known or should have been known
to the other party." La. Civ. Code art. 1949.  Louisiana courts interpret Article 1949 to allow for
rescission on grounds of unilateral error.  *See Nugent v. Stanley*, 336 So.2d 1058, 1063 (La. App.
3rd Cir. 1976) ("The jurisprudence . . . establishes that a contract may be invalidated for
unilateral error as to a fact which was a principal cause for making the contract, where the other
party knew or should have known it was the principle cause.").  Article 1950, which defines
error, expressly recognizes errors of law in addition to errors of fact.  *See* La. Civ. Code art.
1950.  "Error may concern a cause when it bears on the nature of the contract . . . or the law, or
any other circumstance that the parties regarded, or should in good faith have regarded, as a
cause of the obligation."  *Id.*

Turning to the facts, the Court finds Vaczilla's pleading sufficient to survive VFS's
12(b)(6) Motion to Dismiss.  Vaczilla alleges error regarding the propriety of the down payment
arrangement in the contract, and further avers that VFS knew or should have known of said error.
To support its contention that the error was a cause of the finance agreements, Vaczilla states
that Vaczilla would not have entered into the financing agreements if Vaczilla had known of the
impropriety or illegality of the down payments.  R. Doc. 24 at 19.  Accepting this pleading as
true, Vaczilla satisfies the error component of its claim.  *See Lormand v. U.S. Unwired, Inc.*, 565

F.3d 228, 232–33 (5th Cir. 2009) (noting that a district court considering a motion to dismiss must construe all evidence in favor of non-movant).  Vaczilla also contends that VFS knew or should have known of the error, and the fact that one of VFS's employees noted the excessively high price of the trucks is sufficient to raise an inference of VFS's knowledge.  R. Doc. 24 at 16.  Thus, Vaczilla's claim is "plausible on its face."  *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007).

> ### E.   Claim for Negligent Misrepresentation

Under Louisiana law, negligent misrepresentation constitutes the following elements: (1) a duty to supply correct information; (2) breach of that duty, which can be by omission as well as by affirmative misrepresentation; and (3) damages resulting from plaintiff's reasonable reliance on the misrepresentation.  *See Kadlec Medical Center v. Lakeview Anesthesia Associates*, 572 F.3d 412, 418 (5th Cir. 2008).  A duty to disclose does not exist absent special circumstances which justify the imposition of the duty.  *See id.* at 420; *see also In re Ward*, 894 F.2d 771, 776 (5th Cir. 1990) (finding no duty to disclose between a law firm and a bankruptcy court or the trustee).  Whether a duty to disclose exists is a question of law.  *Harris v. Pizza Hut of Louisiana, Inc.,* 455 So.2d 1364, 1371 (La. 1984).

> #### 1.   Breach of Duty and Justifiable Reliance

Assuming for the moment that a duty to disclose existed, Vaczilla alleges that VFS breached its duty when it did not disclose to Vaczilla the impropriety or illegality of the down payment financing arrangement.  R. Doc. 24 at 20.  Because Louisiana allows for breach of a duty to disclose by omission, *see Kadlec*, 572 F.3d at 418, this allegation is sufficient.

Turning to Vaczilla's justifiable reliance and resulting damages, the Court finds that Vaczilla's reliance is justified on the pleadings.  Reliance on a representation of law is rarely

justified, but "the existence of a confidential relationship between the parties or greatly superior knowledge of the subject on the part of the representor" can support a claim of misrepresentation. *American Bank & Trust Co. v. Trinity Universal Ins. Co.*, 251 La. 445, 460 (La. 1967). Vaczilla avers that VFS had greatly superior knowledge of the legality or propriety of the financing agreements at issue. R. Doc. 34 at 17. Vaczilla supports this contention by claiming that Vaczilla had no knowledge of impropriety until early 2015, and that VFS in contrast knew or should have known of the impropriety when Mr. Cluebine remarked on the excessively high vehicle prices in February, 2012. R. Doc. 24 at 16. Upon reviewing Vaczilla's pleading, the Court finds it inappropriate to dismiss the claim on grounds of lack of breach or justifiable reliance.

2. Duty to Disclose

A duty to disclose does not exist absent special circumstances which justify the imposition of the duty. *See Kadlec*, 572 F.3d at 420. A duty to disclose may arise through privity of contract. *See McLachlan v. New York Life Ins. Co.*, 488 F.3d 624, 627–28 (5th Cir. 2007) (citing *Daye v. General Motors Corp.,* 720 So.2d 654, 659 (La.1998)). Louisiana courts evaluate the existence of a duty to disclose on a "case-by-case basis," and look to

> moral, social, and economic factors, including: 1) whether the imposition of a duty would result in an unmanageable flow of litigation; 2) the ease of association between the plaintiff's harm and defendant's conduct; 3) the economic impact on society and similarly situated parties; 4) the nature of the defendant's activity; 5) moral considerations, particularly victim fault; 6) precedent; and 7) the direction in which society and its institutions are evolving.

24

*McLachlan*, 488 F.3d at 627–28; *see also Bunge Corp.*, 557 So. 2d 1376, 1384 (La. 1990)

(noting that Louisiana courts tend to impose duties to disclose where "the failure to disclose

would violate a standard requiring conformity to what the ordinary ethical person would have

disclosed").

       Viewing the facts in the light most favorable to Vaczilla, the Court finds that several of

the moral, social, and economic factors presented in *McLachlan* weigh in favor of VFS.  488

F.3d at 627–28.  Vaczilla asks the Court to find a duty to disclose when a lender knew or should

have known of third-party fraud.  Accepting Vaczilla's pleading as true, Vaczilla's fault is

somewhat limited as Vaczilla relied on representations by a party in a position of trust and

confidence.  The victim's fault is highly pertinent to the fifth *McLachlan* factor.  *See id.*

However, it seems morally disingenuous of Vaczilla to subsequently assert that VFS was at fault

when Vaczilla affirmatively represented to VFS in the Finance Contracts that Vaczilla had paid

the down payments.  *See, e.g.*, R. Doc. 39-3 at 2 (noting a $17,000 down payment on a secured

promissory note for equipment signed by Vaczilla).  Thus, this factor does not weigh heavily

towards Vaczilla.

       The sixth *McLachlan* factor, precedent, strongly suggests that this Court should not find a

duty to disclose.  No Louisiana court or court applying Louisiana law has found special

circumstances creating a duty to disclose in the context of a lender-borrower contractual

relationship.  Rather, "[D]ealings between lending institutions and borrowers are generally

considered to be arm's length transactions which do not impose any independent duty of care on

the part of the lender."  *Bluebonnet Hotel Ventures, L.L.D. v. Wachovia Bank, N.A.*, 2011 U.S.

Dist. LEXIS 158525, *29 (M.D. La. Sept. 28, 2011) (citing *Guimmo v. Albarado*, 739 So.2d 973,

975 (La. App. 5th Cir. 1999)).  Precedent regarding other forms of contractual relationships also

indicates that courts are wary to impose a duty to disclose in analogous contractual relationships. For instance, the Fifth Circuit has declined to impose a duty to disclose in the context of an insurer-insured relationship. *McLachlan v. New York Life Ins. Co.*, 488 F.3d 624, 628–29 (5th Cir. 2007). Courts interpreting Louisiana law have also declined to impose a duty to disclose regarding "ordinary supplier-customer" contracts. *Wilson v. Mobil Oil Corp.*, 940 F.Supp 944, 955 (E.D. La. 1995).

The Court further finds that imposing a duty to disclose in this factual scenario will result in an "unmanageable flow of litigation." *McLachlan*, 488 F.3d at 627–28. The facts in Vaczilla's pleading, when viewed most favorably to Vaczilla, suggest that VFS was aware that Vaczilla was substantially overpaying for vehicles. To put it mildly, the halls of the judiciary would be overcrowded if a suit were filed every time a loan was granted to pay for overpriced goods. The existence of a duty is even more troubling on the facts at bar, because Vaczilla asserts more than a duty to disclose. Rather, Vaczilla avers that a duty arose to "investigate the matter" and to "inform Defendants of the impropriety of the financing arrangement orchestrated by Parish and Bennet." R. Doc. 43 at 16. The interests of judicial economy strongly discourage a finding that lenders owe a duty to independently investigate the propriety of business deals even when prices are excessive. The Court also notes that imposing a duty to investigate and disclose in cases similar to the one at bar would have serious economic ratifications in the markets for financing and loans. *See McLachlan*, 488 F.3d at 627–28 (noting that the economic impact on society is relevant to imposing a duty to disclose).

Thus, factors one, three, and six of the *McLachlan* test weigh against finding a duty, and factor five is a wash. The other *McLachlan* factors either do not weigh in Vaczilla's favor or are difficult to evaluate this early in the litigation. However, given the facts pleaded by Vaczilla and

26

this Court's initial application of the *McLachlan* test, the Court finds VFS's lack of duty obvious. A lender has no duty to affirmatively investigate, discover, and disclose improprieties when alerted to excessively high prices.  In holding as a matter of law that no duty exists on these facts, the Court notes that the existence of a duty is determined on a "case-by-case basis" and that some combination of grossly outrageous prices and clear circumstantial evidence of impropriety may support a lender-borrower duty to investigate and disclose.  *See McLachlan*, 488 F.3d at 627.  But these facts are not presently before the Court.

### F.      Applicable Statutes of Limitations

Because Louisiana law controls both the rescission and tort claims at bar, Louisiana's statutes of limitations are applicable.

Actions to rescind contracts for fraud or error under Louisiana law do not prescribe until five years from the time that the fraud or error was discovered.  La. Civ. Code art. 2032. Vaczilla's purchase of the vehicles did not begin until November 2011, so its claim is timely filed.  R. Doc. 24 at 15.

Delictual actions, such as negligent misrepresentations, are subject to a one-year statute of limitations under Louisiana law.  La. Civ. Code art. 3492; *see also Clark v. Constellation Brands, Inc.*, 348 Fed. Appx. 19, 23 (5th Cir. La. 2009) (noting that negligent misrepresentation damages have a one-year prescriptive period, even if the parties have a contractual relationship). The prescriptive period for actions sounding in tort begins when "a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort."  *Keenan v. Donaldson Lufkin & Jenrette, Inc.*, 575 F.3d 483, 489 (5th Cir. La. 2009).

The Court finds that Vaczilla did not discover facts sufficient to indicate that Vaczilla was the victim of a tort until 2015.  It is insufficient that Vaczilla had all of the facts concerning

the down payment arrangement.  While Vaczilla was aware of the factual premises of the down payment arrangement as early as 2011, Vaczilla was not aware that VFS negligently omitted to supply correct information regarding the legality of the down payment arrangement until 2015. R. Doc. 43 at 17.  The discovery rule hinges on whether a reasonable person upon examining the facts before them would realize that they were the victim of a tort.  *See* Keenan, 575 F.3d 489. Because a reasonable person in Vaczilla's position may have failed to realize they were the victim of a tort until 2015, Vaczilla's counterclaim was filed within the applicable prescriptive period for purposes of a motion to dismiss.

### G.     Motion to Require Joinder of Parties

Joinder is the process by which one or more parties or claims are added to an existing lawsuit.  Necessary joinder occurs when additional parties or claims ***must*** be added to the lawsuit in order for the suit to proceed, and permissive joinder occurs when the parties or claims are ***permitted*** to be added to the lawsuit, but the lawsuit may still proceed even if the additional parties are not added.  VFS argues that joinder is required in this case, whereas Vaczilla argues that any joint liability for VFS's omissions owed by Parish Truck Sales is cause for impleader, not joinder.  R. Doc. 43 at 23–24.  VFS specifically argues that Parish Truck Sales, Brian Bennett, and Michael Whitlow (the Parish Defendants) be joined in Vaczilla's counterclaims.

#### 1.  The Law of Joinder

Under Federal Rule of Civil Procedure 19(a), an absent party may be joined as a necessary party.  Fed. R. Civ. P. 19(a).   Rule 19(a) provides that joinder is required when:

**(a) Persons Required to Be Joined if Feasible.**

(1) *Required Party.* A person who is subject to service of process and whose

joinder will not deprive the court of subject-matter jurisdiction must be joined as a

party if:

> (A) in that person's absence, the court cannot accord complete relief
>
> among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is
>
> so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to
> >
> > protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring
> >
> > double, multiple, or otherwise inconsistent obligations because of
> >
> > the interest.

Fed. R. Civ. P. 19(a).

There is no precise formulation of when a nonparty should be joined under Rule 19(a),

but courts give consideration to the desirability of avoiding multiple litigation, affording

complete relief within a single action, and shielding the nonparty from any prejudicial effects of

deciding the instant action without their involvement.  7 Wright, Miller & Kane, *Federal*

*Practice and Procedure: Civil 3d* § 1604 (2001).  "It is to be stressed that the criteria set forth in

Rule 19 are not to be applied mechanically nor are they to be used to override compelling

substantive interests."  *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970).  The Rule 19

inquiry "is a highly-practical, fact-based endeavor."  *Hood v. City of Memphis*, 570 F.3d 625,

628 (5th Cir. 2009).  There are touchstones despite the somewhat fluid lens through which a

court must view Rule 19.  Rule 19 does not require the joinder of joint tortfeasors, principals and agents, or persons against whom a party may have a claim for contribution.  *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880–81 (5th Cir. 1987).

### 2.   Joinder under Rule 19(a)(1)(A)

"Complete relief" as set forth under Rule 19(a)(1)(A) concerns whether a court can afford relief among the parties already present in the litigation.  A court does not consider the effect that a judgment may have on absent parties when evaluating "complete relief."  *United States v. Rutherford Oil Corp.*, No. CIV.A. G-08-0231, 2009 WL 1351794, at *2 (S.D. Tex. May 13, 2009).

The Parish Defendants are not yet a party to the instant litigation, so the Parish Defendant's interests in complete relief regarding rescission of the contracts are not implicated by Vaczilla's counterclaims.  Turning to the relief requested by the parties, while it is sometimes true that loan proceeds must be returned in order for a court to grant rescission, this rule only holds where the holder of the loan proceeds seeks rescission of the contract.  *St. Bernard Sav. & Loan Ass'n v. Levet*, 856 F. Supp. 1166, 1173–74 (E.D. La. 1994).  Vaczilla asserts no other grounds for why this Court cannot provide the requested relief of rescission of the finance contracts and/or the grant of damages.  Thus, Rule 19(a)(1)(A) does not require joinder.

Any subsequent claim that VFS may have against the Parish Defendants for the return of loan proceeds or contribution in tort is not implicated by Rule 19(a)(1)(A).  Despite VFS's concern that the Parish Defendants may be able to keep the loan proceeds in spite of a judgment against VFS, "a 'logically inconsistent' verdict denying recovery in a later suit for contribution or indemnity does not change this result."  *Ortiz v. A.N.P., Inc.*, No. 10-CV-917, 2010 WL

2702595, at *4 (S.D. Tex. Sept. 15, 2010) (internal citations omitted); *see also James v. Valvoline, Inc.*, 159 F. Supp. 2d 544, 552 (S.D. Tex. 2001) (holding the same).

### 3.   Joinder Under Rule 19(a)(1)(B)

For the Parish Defendants to be a necessary party under Rule 19(a)(1)(B), this Court must initially find that the Parish Defendants "claim[] an interest relating to the subject of the action." The Court must then find that the Parish Defendants' absence from the litigation would either "impair or impede [the Parish Defendants'] ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B).

If the Parish Defendants were merely a joint tortfeasor potentially liable to Vaczilla with regards to the issue of comparative fault for the misrepresentation counterclaim, then they would be only a permissive co-defendant pursuant to *Temple v. Synthes Corp.*, 498 U.S. 5, 6 (1990). Likewise, the fact that VFS may be able to seek indemnification from the Parish Defendants under their Retail Finance Plan Agreement following rescission of the contracts is alone insufficient to make the Parish Defendants a necessary party.  *See Nottingham v. General American Communications Corp.,* 811 F.2d 873, 880 (5th Cir. 1987); *United States v. Rutherford Oil Corp.*, No. CIV.A. G-08-0231, 2009 WL 1351794, at *2 (S.D. Tex. May 13, 2009).  Neither comparative fault nor the possibility of indemnification impedes the ability of the Parish Defendants to protect their interest in the litigation.

However, the Court finds that the Parish Defendants have an interest in the rescission and negligence actions at bar, because the facts concerning the state law claims against the Parish Defendants are inextricably intertwined with the facts of this case.  A judgment by this Court may create persuasive authority that will prejudice the Parish Defendants's defense in state court.

The Fifth Circuit recognizes that the establishment of a negative precedent regarding similar claims arising from the same incident can provide the requisite prejudice for joining an absentee under Rule 19(a)(1)(B). *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1310 (5th Cir. 1986) (citing *Read v. Phillips Petroleum Co.*, 441 F.Supp. 1184, 1186 (E.D. La. Nov. 8, 1977)); *see also Faloon v. Sunburst Bank*, 158 F.R.D. 378, 381 (N.D. Miss. Nov. 17, 1994) (recognizing the possibility of Rule 19(a) prejudice from "negative precedent"); *Sylve v. Searail, Inc.*, No. CIV. A. 85-5787, 1987 WL 8445, at *2 (E.D. La. Mar. 26, 1987) (holding the same); *cf. Chadwick v. Arabian Am. Oil Co.*, 656 F. Supp. 857, 862 (D.Del. 1987) (holding that harm to a non-joined parties' commercial reputation was a cognizable interest under Rule 19(a).

For instance, in *Pulitzer-Polster*, the Fifth Circuit found a risk of negative precedent supported Rule 19(a)(1)(B) joinder where suits regarding improprieties by a voting trustee were filed by separate plaintiffs in both state and federal court. 784 F.2d at 1310–1311. Specifically, the Fifth Circuit recognized that while any finding regarding the voting trustee would not be binding on the state court hearing similar claims, "as a practical matter the state court would undoubtedly consider and possibly respect any such federal ruling." *Id.* Thus, the state court parties had an interest in the outcome of the federal litigation. *Id.* So too here. The Parish Defendants are an "active participant in the alleged [fraud]" and therefore "more than a key witness whose testimony would be of inestimable value." *Haas v. Jefferson Nat. Bank of Miami Beach*, 442 F.2d 394 (5th Cir. 1971). The Parish Defendants must be joined in order to prevent this Court's holding from trickling down to state court and prejudicing their defense.

Because the Court finds that Vaczilla's negligent misrepresentation claim fails as a matter of law on grounds of the existence of a duty, the Court chooses not to address the propriety of joining the Parish defendants to the negligent misrepresentation claim.

## IV.      CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that VFS's Motion to Dismiss for Failure to State a Claim (R. Doc. 39) is **GRANTED IN PART AND DENIED IN PART**.  VFS's motion is **GRANTED** regarding Vaczilla's claim of negligent misrepresentation.  VFS's motion is **DENIED** regarding Vaczilla's claims for rescission on grounds of fraud and rescission on grounds of error.  VFS's Motion to Join Necessary Parties (R. Doc. 39) is **GRANTED**.  VFS's request at oral argument to join Maczilla is **DENIED** as this request was not filed as a motion, and is therefore not before the Court.

New Orleans, Louisiana, this 13th day of November, 2015.

_____
UNITED STATES DISTRICT JUDGE