UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| VFS US LLC | CIVIL ACTION |
| VERSUS | NO. 15-02226 |
| VACZILLA TRUCKING, LLC, CRYSTAL DITCHARO, AND DOMINICK DITCHARO | SECTION "L" (2) |

## ORDER & REASONS

Before the Court is General Electric Capital Corporation ("GE") Motion to Dismiss the claims asserted against it by Defendants/Plaintiffs-in-Counterclaim. R. Doc. 67. The Court has reviewed the briefs and the applicable law, and the Court now issues this Order & Reasons.

**I.   BACKGROUND**

This case arises out of a contract dispute. Vaczilla was a new firm that sought to enter the market for servicing water to the oil and gas exploration and production industry in North Dakota. R. Doc. 57 at 3–4. Vaczilla's initial foray into the market yielded little revenue. *Id.* at 4. In response to this lack of demand, Defendants/Plaintiffs-in-Counterclaim Vaczilla Trucking, LLC ("Vaczilla"), Mackzilla, LLC ("Mackzilla") Dominick Ditcharo III, and Crystal Ditcharo (collectively, "Vaczilla") purchased several vehicles from Parish Truck Sales, Inc. ("Parish Truck Sales") for the purpose of transporting crude. *Id.* To finance these purchases, Vaczilla entered into a series of contracts with VFS US LLC ("VFS") and GE.

As relevant to the instant motion, between 2011 and 2013, Borrowers entered into a series of loan agreements with GE Capital pursuant to which GE Capital lent money to Borrowers for Borrowers' purchase of certain equipment for use in their businesses. Specifically, the parties entered into the following agreements (with those in *italics* below being the only

agreements regarding which Vaczilla asserts claims against GE Capital):

1. Security Agreement, dated October 18, 2011, between Parish Truck Sales, Inc. and Vackzilla, amended by the Modification Agreement dated February 28, 2013 (the "First Vaczilla Loan Agreement").

2. *Security Agreement, dated November 10, 2011, between Parish Truck Sales, Inc. and Vackzilla, amended by the Modification Agreement dated February 28, 2013 (the "Second Vaczilla Loan Agreement").*

3. *Security Agreement, dated November 25, 2011, between Parish Truck Sales, Inc. and Vackzilla, amended by the Modification Agreement dated February 28, 2013 (the "Third Vaczilla Loan Agreement")."*

4. *Security Agreement, dated December 16, 2011, between GE Capital and Vackzilla, amended by the Modification Agreement dated February 28, 2013 (the "Fourth Vaczilla Loan Agreement").*

5. *Security Agreement, dated October 2, 2012, between GE Capital and Vackzilla, amended by the Modification Agreement dated February 28, 2013 (the "Fifth Vaczilla Loan Agreement").*

6. *Security Agreement, dated October 3, 2012, between GE Capital and Vackzilla, amended by the Modification Agreement dated February 28, 2013 (the "Sixth Vaczilla Loan Agreement").*

7. Security Agreement, dated July 20, 2012, between GE Capital and Mackzilla (the "First Mackzilla Loan Agreement").

8. Security Agreement, dated July 26, 2012, between GE Capital and Mackzilla (the "Second Mackzilla Loan Agreement").

9. *Security Agreement, dated August 8, 2012, between GE Capital and Mackzilla (the "Third Mackzilla Loan Agreement").*

10. *Security Agreement, dated August 15, 2012, between GE Capital and Mackzilla (the "Fourth Mackzilla Loan Agreement").*

11. *Security Agreement, dated August 15, 2012, between GE Capital and Mackzilla (the "Fifth Mackzilla Loan Agreement").*

Hereinafter, (i) the First Vaczilla Loan Agreement, Second Vaczilla Loan Agreement, Third Vaczilla Loan Agreement, Fourth Vaczilla Loan Agreement, Fifth Vaczilla Loan Agreement, and Sixth Vaczilla Loan Agreement are referred to collectively as the "Vaczilla

Loan Agreements;" (ii) the First Mackzilla Loan Agreement, Second Mackzilla Loan Agreement, Third Mackzilla Loan Agreement, Fourth Mackzilla Loan Agreement, and Fifth Mackzilla Loan Agreement are referred to collectively as the "Mackzilla Loan Agreements." For consideration of entering into the Agreements, Borrowers granted GE Capital a security interest in the vehicles described therein. The Agreements require that Borrowers repay money lent by GE Capital pursuant to the payment schedule set forth in each Agreement.

In early 2013, Vaczilla requested that GE modify the payment schedules for several of the Loan Agreements, and GE agreed to modify the payment terms pursuant to the terms and agreements set forth in a series of Modification Agreements. The Modification Agreements state,

> BUYER HEREBY REAFFIRMS ALL PAYMENT AND PERFORMANCE OBLIGATIONS TO GE CAPITAL CONTAINED IN THE CONTRACT AS AMENDED AND ANY AND ALL CREDIT SUPPORT DOCUMENTS, AND ALL TERMS, COVENANTS AND CONDITIONS THEREOF, BUYER ACKNOWLEDGES AND REPRESENTS THAT BUYER HAS NO VALID DEFENSE, SETOFF, RECOUPMENT, ABATEMENT, OR COUNTER CLAIM TO THE PAYMENT OF ANY SUMS DUE, OR TO PERFORMANCE OF ANY OBLIGATIONS, UNDER THE CONTRACT AND CREDIT SUPPORT DOCUMENTS, OR ANY OF THEM, NOR DOES BUYER HAVE ANY VALID CLAIMS AGAINST GE CAPITAL OR ITS PREDECESSORS-IN-INTEREST OR ASSIGNORS, OR LEGAL OR EQUITABLE RIGHTS IN REGARD TO ENFORCEMENT OF THE OBLIGATIONS OF BUYER BY GE CAPITAL UNDER THE CONTRACT AND CREDIT SUPPORT DOCUMENTS, OR ANY OF THEM, AND BUYER SPECIFICALLY WAIVES AND RELINQUISHES ANY SUCH RIGHTS OR CLAIMS.

R. Doc. 67-1 at 6.  Vaczilla subsequently defaulted on its payments to both VFS and GE, and VFS brought the present action against Vaczilla to collect the balances due.

Vaczilla responded by filing a Counterclaim against VFS in August 2015, arguing that its finance contracts with VFS should be rescinded due to fraud and error.  Vaczilla also brought a Counterclaim for negligent representation against VFS. On September 29, 2015, VFS filed a

motion to dismiss the Counterclaim against it. The Court denied VFS's motion to dismiss regarding Vaczilla's claims for rescission on grounds of fraud and error but granted VFS's request to dismiss Vaczilla's claim of negligent representation. R. Doc. 52.[1]

In February 2016, Vaczilla amended its Counterclaim, alleging the same three causes of action against GE that it had already alleged against VFS: namely, (1) rescission of contracts for fraud; (2) rescission of contracts for error; and (3) negligent representation. R. Doc. 57. On April 11, 2016, GE brought the present motion to dismiss the Counterclaim against it.[2]

Regarding its request for rescission, Vaczilla alleges that its contract with Parish Truck Sales was premised on an improper sales method. Vaczilla could not afford to make down payments, so Vaczilla was charged an excessive price for the vehicles, and in return Vaczilla received a credit for down payments which Vaczilla never made to Parish Truck Sales. This arrangement allowed Vaczilla to purchase the vehicles without making the down payments set forth in the Bill of Sales. This deal appeared favorable to Vaczilla, because Vaczilla did not have sufficient capital to make the down payments. According to Vaczilla, the company relied on Parish's and Brian Bennett's ("Bennett") assurances that the arrangement was legally and fiscally sound, and GE signed off on the Loan Agreements despite being aware that the price appeared to be suspicious.

Vaczilla claims that the excessive price for the vehicles and the accompanying illusory down payments constitute improper acts which warrant rescission of the contracts. Specifically, Vaczilla avers that GE "knew or should have known" that the price for the trucks was unusually

---

[1] Notably, the arguments in the instant motion by GE are similar to those in prior motion brought by VFS. Accordingly, on occasion, the Court refers back to this prior Order and Reasons granting VFS's motion in part and denying it in part.

[2] As mentioned above, the present motion is similar to a prior motion filed by VFS on which the Court already ruled.

4

high and should have concluded that an impropriety existed, and that notice of such impropriety is sufficient in equity to rescind the Loan Agreements on the grounds of fraud, R. Doc. 57 at 12-14, as well as error, *Id.* at 14-16.  Vaczilla additionally argues that GE's actions constitute negligent misrepresentation, and that said misrepresentation entitles Vaczilla to damages.  *Id.* at 18.

## II.     PRESENT MOTION

GE moves to dismiss the Counterclaim filed by Vaczilla against GE, on the grounds that Vaczilla fails to state a claim.  R. Doc. 67.  GE argues that Vaczilla's claims fail for two reasons: (1) *assuming arguendo* that Vaczilla was fraudulently induced by Parish into purchasing vehicles, GE is not liable as it neither knew nor should have known of the fraudulent scheme perpetuated by Parish; and (2) the Modification Agreements effectuate a release of all claims related to the Loan Agreements that were modified.  *Id.*

## III.    CHOICE OF LAW

The Mackzilla Loan Agreements, as well as the Fourth, Fifth, and Sixth Vaczilla Loan Agreement contain a choice of law provision which designates Texas law as governing the contract.  Courts sitting in diversity apply the substantive law of the state in which the court sits when analyzing conflict of law principles. *See Hyde v. Hoffman-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007). Here, the Court looks to Louisiana law to determine whether the choice of law provision in the Agreements controls.  Louisiana law gives full force and effect to contractual choice of law provisions, and "Louisiana courts will not invalidate a contractual choice-of-law provision unless there is legal authority to the contrary or the chosen law is *contra bonos mores.*" *Enhanced La. Capital II, LLC v. Brent Homes,* 2012-2409, 2013 WL 2459435, *2 (E.D. La. 06/06/13). Specifically, it is "well established that where the parties stipulate the state

law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary." *Mobil Explor. & Producing U.S., Inc. v. Certain Underwriters Subscribing to Cover Note 95–3317(A)*, 2001–2219 (La. App. 1 Cir. 11/20/2002), 837 So.2d 11, 42–43 (enforcing Texas choice of law provision). Thus, the parties' private agreement regarding choice of law will not be challenged, except to the extent that the chosen law contravenes the public policy of the state whose law would otherwise be applicable. *Id.*; *see also* La. Civ. Code art. 3540 ("[a]ll other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537").

When a party challenges a choice of law provision, such a challenge must be made to the choice of law provision itself, not simply to the overarching contract as a whole.[3] The Fifth Circuit has addressed this issue in the context of fraud and has held that, where fraud is not alleged as to the choice of law provisions *specifically*, the choice of law provisions control. For example, in *Haynsworth v. The Corporation*, 121 F.3d 956 (5th Cir. 1997), certain investors in an underwriting exchange brought an action against the exchange alleging various wrongs, including fraud and overreaching, and sought to rescind obligations arising from the underwritten policies. *Id.* at 959–61. The exchange moved to dismiss on the basis of the choice of law and forum selection clause in the policies. *Id.* at 961. On consolidated appeal, the Fifth Circuit explained the difference between general allegations of fraud underlying the contract as a

---

[3] Notably, this argument was not presented by VFS in its earlier, similar motion to dismiss and therefore was not considered by the Court. Consequently, with regard to VFS's motion to dismiss, the Court rejected the choice of law provision articulated in the contracts between VFS and Vaczilla. However, having now considered the present choice of law arguments presented by GE, the Court, as discussed below, is persuaded that the Texas choice of law provisions control the relevant contracts.

6

whole, and fraud attaching to the choice of law clause itself. *Id.* at 963. The Fifth Circuit found the former to be insufficient in challenging a choice of law provision, stating that "allegations of such conduct as to the contract as a whole—or portions of it other than the [forum selection/choice of law] clause—are insufficient; the claims of fraud or overreaching must be aimed straight at the [forum selection/choice of law] clause in order to succeed." *Id.* The Fifth Circuit continued to state that, "to the extent the plaintiffs claim fraud and overreaching in aspects of the [policies] other than the [forum selection/choice of law] clause, their allegations are irrelevant to enforceability." *Id.* (emphasis added).

The Fifth Circuit followed the same principle in *Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412 (5th Cir. 1984), stating that the parties included a choice of law provision in their reinsurance agreement and that the plaintiff had "not alleged that the arbitration or choice-of law agreements were induced by fraud or overreaching so as to negate their validity and effect." *Id.* By contrast, in both cases cited by Vaczilla, *Hollybrook* and *Pratt Paper*, the parties specifically disputed their consent to the choice of law provision at issue. *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, No. 09-0750, 2010 WL 1416781 (W.D. La. 4/1/10); *Pratt Paper (LA), L.L.C. v. JLM Advanced Technical Servs.*, No. 11-1556, 2013 WL 395815 (W.D. La. 1/31/13).

Vaczilla has made no allegation that the choice of law provision committing them to a Texas forum is unenforceable and have made no allegation that any purported fraud goes to the choice of law provision itself. In fact, the choice of law provision is mentioned nowhere in the Counterclaim. Rather, Vaczilla concedes that they signed the Agreements and allege only wrongful conduct exclusive to the "down payment refund scheme." Generalized allegations of fraud as to the contract as a whole are simply insufficient to avoid application of the choice of

7

law provision. Thus, the parties' intent with respect to choice of law governs, and Texas law controls the Mackzilla Loan Agreements, as well as the Fourth, Fifth, and Sixth Vaczilla Loan Agreement. The First, Second Vaczilla Loan Agreement, and Third Vaczilla Loan Agreement are silent with respect to choice of law and, therefore, Louisiana law applies to these three agreements. Accordingly, the Court will analyze Vaczilla's claims under both Louisiana and Texas Law.

## IV.  LAW AND ANALYSIS

### A.  Motion to Dismiss Standard

The Federal Rules of Civil Procedure permit a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court must construe facts in the light most favorable to the nonmoving party. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009). The court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007). A motion to dismiss under rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

### B.  Louisiana Law

1.     **Rescission of Contracts for Fraud**

Under Louisiana law, a claim for rescission of a contract for fraud requires the following elements: (1) a misrepresentation, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another, and (3) the error induced by the fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract. *See Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 614 (E.D. La. 2015). Article 1956 of Louisiana's Civil Code provides for the rescission of a contract on grounds of fraud by a non-party to the contract "if the other party knew or should have known of the fraud." La. Civ. Code art. 1956. Vaczilla must therefore provide facts that plausibly support the three elements of a claim for rescission of a contract for fraud in addition to facts suggesting that GE knew or should have known of the alleged fraud. However, fraudulent inducement "does not vitiate a party's consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." La. Civ. Code art. 1954.

In its prior Order and Reasons addressing VFS's motion to dismiss, this Court held that Vaczilla provided facts that plausibly support the three elements of a claim for rescission of a contract for fraud. R. Doc. 52. More particularly, this Court held that, for purposes of a motion to dismiss, Vaczilla sufficiently pled that (1) Parish misrepresented true information when Bennett proposed the phantom down payments to Vaczilla; (2) Parish and Bennett intended to obtain an unjust advantage in the form of increased sales by these intentional misrepresentation; and (3) Parish and Bennett's misrepresentations and omissions directly resulted in Vaczilla's decision to enter into the contracts at issue i.e., the vehicle purchases and associated financing agreements with GE. *Id.*

9

Accordingly, the present issue before this Court is whether Vaczilla plausibly pled that GE knew or should have known of the alleged fraud. Vaczilla premises its claim that GE knew or should have known of the alleged fraud on the fact that GE has significant experience with lending in the commercial trucking industry (purporting to be "the industry-leader" in financing in the trucking industry) and that it holds itself out as having "collateral expertise." R. Doc. 57 at 9. The Counterclaim alleges that this experience is more than sufficient for GE to be aware of the inflated price of collateral that it is financing. *Id.* at 10.

In its prior Order and Reasons addressing VFS's motion to dismiss, this Court held that Vaczilla plausibly pled that VFS knew or should have known that Parish had committed fraud on the basis of a conversation that occurred over dinner at Drago's in New Orleans. (R. Doc. 52 at 19). Vaczilla alleges that Dominick Ditcharo, as a representative of Vaczilla, met with Richard Cluebine, a regional manager for VFS, on or about February 15, 2012, to discuss a grant of additional financing to Vaczilla. (R. Doc. 24 at 16). Vaczilla alleges further that Mr. Cluebine noted over the course of dinner that "the sale prices of the trucks and trailers were very high and further remarked that he had never seen trailer prices that high." (R. Doc. 24 at 16). Thus, guided solely by the pleadings, this Court held that Vaczilla plausibly imputed knowledge of the fraud at issue to VFS. (R. Doc. 52 at 19-20).

However, the instant Motion is distinguishable from the Court's prior findings in the Order with respect to whether VFS plausibly knew or should have known of the alleged fraud. Unlike the Court's findings with respect to VFS, no alleged meeting took place between Dominick Ditcharo and a representative of GE Capital in February 2012 or any other time. In addition, in contrast to the Vaczilla's contracts with VFS, the Mackzilla Loan Agreements executed by Vaczilla and GE Capital describe the collateral and the amount borrowed, but do not

include the sale price, down payment amount, or other information relevant to the alleged fraud. The only "facts" alleged in the Counterclaim to support GE Capital's alleged knowledge are quotes from "promotional literature," asserting that GE Capital is an industry leader in financing commercial trucks. Such generic allegations, however, do not tend to show that GE Capital knew of should have known of *this* alleged fraud. Accordingly, there are no facts alleged in the Counterclaim to support the allegation that GE Capital knew or should have known of the alleged fraud.

### 2. Rescission of Contracts for Error

Under Louisiana law, error vitiates consent "when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ. Code art. 1949. Louisiana courts interpret Article 1949 to allow for rescission on grounds of unilateral error. *See Nugent v. Stanley*, 336 So.2d 1058, 1063 (La. App. 3rd Cir. 1976) ("The jurisprudence . . . establishes that a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principle cause."). Article 1950, which defines error, expressly recognizes errors of law in addition to errors of fact. *See* La. Civ. Code art. 1950. "Error may concern a cause when it bears on the nature of the contract . . . or the law, or any other circumstance that the parties regarded, or should in good faith have regarded, as a cause of the obligation." *Id.*

Turning to the facts, the Court finds Vaczilla's pleading insufficient to survive GE's 12(b)(6) Motion to Dismiss. Vaczilla alleges error regarding the propriety of the down payment arrangement in the contract, and further avers that GE knew or should have known of said error. To support its contention that the error was a cause of the Loan Agreements, Vaczilla alleges that

it would not have entered into the Loan Agreements if Vaczilla had known of the impropriety or illegality of the down payments. Accepting this pleading as true, Vaczilla satisfies the error component of its claim. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir. 2009) (noting that a district court considering a motion to dismiss must construe all evidence in favor of non-movant). However, Vaczilla fails to plausibly allege that GE knew or should have known of the error, and the fact that GE is an industry leader in the commercial trucking financing industry is insufficient to raise an inference of GE's knowledge. R. Doc. 24 at 16. Thus, Vaczilla's claim is not "plausible on its face." *Bell Atlantic Corporation et al. v. William Twombly,* 550 U.S. 544, 570 (2007).

### C. Texas Law

#### 1. Rescission of Contracts for Fraud

Under Texas law, rescission is not a cause of action but an equitable remedy that may be granted upon certain grounds such as fraud. *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 455 (Tex. App. 1998). The most analogous cause of action under Texas Law is fraud in the inducement. "To bring a claim for fraud in the inducement, a plaintiff must show the elements of fraud, and must show that she has been fraudulently induced to enter into a binding agreement." *In re Guardianship of Patlan*, 350 S.W.3d 189, 198 (Tex. App. 2011) (internal citations omitted). "To bring a claim for common law fraud, a plaintiff must show the following: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Id.* Further, the allegations must "relate

12

to an agreement between the parties." *In re Provider Meds, LP*, No. 13-30678-BJH, 2014 WL 4162870, at *5 (Bankr. N.D. Tex. Aug. 20, 2014).

Moreover, some injury must be shown to constitute cause for rescission of a contract for fraud. *Featherlax Corp. v. Chandler*, 412 S.W.2d 783, 789 (Tex. Civ. App. 1966). As a remedy for fraud in the inducement, "[t]he defrauded purchaser is put to an election whether he will keep the property and recover damages, or rescind the sale and return the property while recovering the value he has parted with." *Bank One*, 67 S.W.2d at 455. To be entitled to rescission, a party must show (1) he and the defrauding party are in the status quo, that is, he is not retaining benefits received under the instrument without restoration to the other party; or (2) there are equitable considerations that obviate the need for the status quo relationship. *Id.*

Here, the Counterclaim fails to properly plead fraud in the inducement, and, considering Vaczilla's theory of the case, leave to amend the Counterclaim to assert causes of action under Texas law would not affect this Court's ruling. Vaczilla's theory of the case is that Parish, not GE, induced Vaczilla into purchasing certain vehicles. No allegation is made that GE, or any of its representatives, made any representations, false or otherwise, regarding the Loan Agreements or the propriety of the alleged scheme. Additionally, no person is alleged to have made any representations regarding the Mackzilla Loan Agreements, and none of the alleged misrepresentations relate to an agreement between the Vaczilla and GE.

Moreover, assuming *arguendo* that Vaczilla could amend the Counterclaim to allege fraud in the inducement with respect to the respective bills of sale, Vaczilla is not entitled to the equitable remedy of rescission of the Loan Agreements. Vaczilla does not allege that it is able or willing to return the money loaned to them to purchase the vehicles. Thus, Vaczilla alleges no facts to show that they are entitled to rescission, and accordingly, GE is entitled to judgment as a

matter of law on the rescission for fraud claim. *See Siens v. Trian, LLC*, No. A-11-CV-075-AWA, 2014 WL 1900737, at *5 (W.D. Tex. May 13, 2014).

### 2. Rescission of Contracts for Error

Similar to rescission of contracts for fraud, rescission of contracts for error is not a cause of action under Texas law. The most analogous cause of action under Texas Law is a claim for relief from a unilateral mistake, which is available when the conditions of remediable mistake are present. *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 219-20 (Tex. App. 2009) (citing *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 372–73 (Tex. 1960)). "These conditions generally are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake was made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i.e., rescission must not result in prejudice to the other party except for the loss of his bargain." *Id.* at 220. The remedy, however, is not available to a party mistaken as to the law, as opposed to a fact. *Oak Hills Properties v. Saga Restaurants, Inc.*, 940 S.W.2d 243, 246 (Tex. App. 1997) ("A mistake of law does not relieve a party to a contract from being bound by its terms.").

Here, the Counterclaim fails to properly plead relief from a unilateral mistake and leave to amend would be futile as no mistake of fact exists with respect to the Loan Agreements. The amount borrowed is the amount described on the face of the Loan Agreements. None of the facts plead in the Counterclaim could lead to the conclusion that enforcement of the Loan Agreements would be unconscionable; the alleged mistake relates to the propriety of the underlying agreement regarding the sale of vehicles, an agreement where GE neither knew or should have known of the alleged error.

### D. Negligent Misrepresentation

Vaczilla has agreed that its negligent misrepresentation claim against GE is the same materially as its prior claim against VFS, which was already dismissed. Accordingly, for the same reasons elaborated in the Court's prior Order and Reasons addressing VFS's motion to dismiss, this Court finds that Vaczilla's Counterclaim likewise fails to state a claim for negligent misrepresentation against GE.

### V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that GE's Motion to Dismiss for Failure to State a Claim is **GRANTED**.

New Orleans, Louisiana, this 11th day of May, 2016.

_____
UNITED STATES DISTRICT JUDGE